# EXHIBIT C

**Annex 1**

**2014 Stock Option Plan**

**VENTURE GLOBAL LNG, INC.**

**2014 STOCK OPTION PLAN**

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| 1. | PURPOSE | 1 |
| 2. | DEFINITIONS | 1 |
| 3. | ADMINISTRATION OF THE PLAN | 7 |
| | 3.1 Committee | 7 |
| |     3.1.1 Powers and Authorities | 7 |
| |     3.1.2 Composition of Committee | 7 |
| |     3.1.3 Other Committees | 7 |
| |     3.1.4 Delegation by Committee. | 8 |
| | 3.2 Board | 8 |
| | 3.3 Terms of Awards | 8 |
| |     3.3.1 Committee Authority | 8 |
| |     3.3.2 Forfeiture; Recoupment | 9 |
| | 3.4 No Repricing Without Stockholder Approval | 9 |
| | 3.5 No Liability | 10 |
| | 3.6 Registration; Share Certificates | 10 |
| 4. | STOCK SUBJECT TO THE PLAN | 10 |
| | 4.1 Number of Shares of Stock Available for Awards | 10 |
| | 4.2 Adjustments in Authorized Shares of Stock | 10 |
| | 4.3 Share Usage | 10 |
| 5. | TERM; AMENDMENT AND TERMINATION | 11 |
| | 5.1 Term | 11 |
| | 5.2 Amendment and Termination | 11 |
| 6. | AWARD ELIGIBILITY AND LIMITATIONS | 11 |
| | 6.1 Eligible Grantees | 11 |
| | 6.2 Stand-Alone, Additional and Substitute Awards | 11 |
| 7. | AWARD AGREEMENT | 12 |
| 8. | TERMS AND CONDITIONS OF OPTIONS | 12 |
| | 8.1 Option Price | 12 |
| | 8.2 Vesting and Exercisability | 12 |
| | 8.3 Term | 12 |
| | 8.4 Termination of Service | 13 |
| | 8.5 Limitations on Exercise of Option | 13 |
| | 8.6 Method of Exercise | 13 |
| | 8.7 Rights of Holders of Options | 13 |
| | 8.8 Delivery of Stock | 13 |
| | 8.9 Transferability of Options | 13 |
| | 8.10 Family Transfers | 14 |
| | 8.11 Limitations on Incentive Stock Options. | 14 |
| | 8.12 Notice of Disqualifying Disposition. | 14 |

i

| | | |
|---|---|---|
| 9. | FORM OF PAYMENT FOR OPTIONS | 14 |
| | 9.1 General Rule | 14 |
| | 9.2 Surrender of Shares of Stock | 15 |
| | 9.3 Cashless Exercise | 15 |
| | 9.4 Other Forms of Payment | 15 |
| 10. | Restrictions on Transfer of Shares of Stock | 15 |
| | 10.1 Right of First Refusal | 15 |
| | 10.2 Repurchase and Other Rights | 15 |
| | 10.3 Legend | 15 |
| 11. | PARACHUTE LIMITATIONS | 16 |
| 12. | REQUIREMENTS OF LAW | 16 |
| | 12.1 General | 16 |
| | 12.2 Rule 16b-3 | 17 |
| 13. | EFFECT OF CHANGES IN CAPITALIZATION | 17 |
| | 13.1 Changes in Stock | 17 |
| | 13.2 Reorganization in Which the Company Is the Surviving Entity Which Does not Constitute a Change in Control | 18 |
| | 13.3 Change in Control in which Awards are not Assumed | 18 |
| | 13.4 Change in Control in which Awards are Assumed | 18 |
| | 13.5 Adjustments | 19 |
| | 13.6 No Limitations on Company | 19 |
| 14. | GENERAL PROVISIONS | 19 |
| | 14.1 Stockholders Agreement | 19 |
| | 14.2 Disclaimer of Rights | 19 |
| | 14.3 Nonexclusivity of the Plan | 20 |
| | 14.4 Withholding Taxes | 20 |
| | 14.5 Captions | 20 |
| | 14.6 Construction | 21 |
| | 14.7 Other Provisions | 21 |
| | 14.8 Number and Gender | 21 |
| | 14.9 Severability | 21 |
| | 14.10 Governing Law | 21 |
| | 14.11 Section 409A of the Code | 21 |

# VENTURE GLOBAL LNG, INC.

## 2014 STOCK OPTION PLAN

### 1. PURPOSE

The Plan is intended to (a) provide eligible individuals with an incentive to contribute to the success of the Company and to operate and manage the Company's business in a manner that will provide for the Company's long-term growth and profitability to benefit its stockholders and other important stakeholders, including its employees and customers, and (b) provide a means of obtaining, rewarding and retaining key personnel. To this end, the Plan provides for the grant of awards of stock options, which may be Non-qualified Stock Options or Incentive Stock Options, as provided herein.

### 2. DEFINITIONS

For purposes of interpreting the Plan documents (including the Plan and Award Agreements), the following definitions shall apply:

2.1 "**Affiliate**" means any company or other entity that controls, is controlled by or is under common control with the Company within the meaning of Rule 405 of Regulation C under the Securities Act, including any Subsidiary. An entity may not be considered an Affiliate unless the Company holds a Controlling Interest in such entity, provided that (a) except as specified in clause (b) below, an interest of "at least 50 percent" shall be used instead of an interest of "at least 80 percent" in each case where "at least 80 percent" appears in Treasury Regulation Section 1.414(c)-2(b)(2)(i) and (b) where the grant of Options is based upon a legitimate business criterion, an interest of "at least 20 percent" shall be used instead of an interest of "at least 80 percent" in each case where "at least 80 percent" appears in Treasury Regulation Section 1.414(c)-2(b)(2)(i).

2.2 "**Applicable Laws**" means the legal requirements relating to the Plan and the Awards under (a) applicable provisions of the corporate, securities, tax and other laws, rules, regulations and government orders of any jurisdiction applicable to Awards granted to residents therein and (b) the rules of any Stock Exchange on which the Stock is listed.

2.3 "**Award**" means a grant under the Plan of an Option.

2.4 "**Award Agreement**" means the agreement between the Company and a Grantee that evidences and sets out the terms and conditions of an Award.

2.5 "**Beneficial Owner**" shall have the meaning set forth in Rule 13d-3 under the Exchange Act.

2.6 "**Benefit Arrangement**" shall mean any formal or informal plan or other arrangement for the direct or indirect provision of compensation to a Grantee (including groups or classes of Grantees or beneficiaries of which the Grantee is a member), whether or not such compensation is deferred, is in cash, or is in the form of a benefit to or for the Grantee.

**2.7**    "**Board**" means the Board of Directors of the Company.

**2.8**    "**Cause**" means, with respect to any Grantee, as determined by the Committee and unless otherwise provided in an applicable agreement between such Grantee and the Company or an Affiliate, (a) gross negligence or willful misconduct in connection with the performance of duties; (b) conviction, or pleading *nolo contendere* to,  of a criminal offense (other than minor traffic offenses); or (c) material breach of any term of any employment, consulting or other services, confidentiality, intellectual property or non-competition agreements, if any, between such Grantee and the Company or an Affiliate. Any determination by the Committee whether an event constituting Cause shall have occurred shall be final, binding and conclusive.

**2.9**    "**Capital Stock**" means, with respect to any Person, any and all shares, interests, participations or other equivalents (however designated, whether voting or non-voting) in equity of such Person, whether outstanding on the Effective Date or issued thereafter, including, without limitation, all Series A Common Stock, par value $0.01 per share, of the Company.

**2.10**    "**Change in Control**" means the occurrence of any of the following:

(a)    during any time when the Company has a class of equity security registered under Section 12 of the Exchange Act, a Person or Group becomes the Beneficial Owner of more than fifty percent (50%) of the total voting power of the Voting Stock of the Company, on a Fully Diluted Basis;

(b)    during any time when the Company has a class of equity security registered under Section 12 of the Exchange Act, individuals who on the Effective Date constitute the Board (together with any new directors whose election by such Board or whose nomination by such Board for election by the stockholders of the Company was approved by a vote of at least a majority of the members of such Board then in office who either were members of such Board on the Effective Date or whose election or nomination for election was previously so approved) cease for any reason to constitute a majority of the members of such Board then in office;

(c)    the Company consolidates with, or merges with or into, any Person, or any Person consolidates with, or merges with or into, the Company, other than any such transaction in which the Prior Stockholders own directly or indirectly at least a majority of the voting power of the Voting Stock of the surviving Person in such merger or consolidation transaction immediately after such transaction, unless this event occurs prior to the time when the Company has a class of equity security registered under Section 12 of the Exchange Act and the Prior Stockholders continue to exercise direct or indirect control of the management and operation of the Company;

(d)    there is consummated any direct or indirect sale, lease, transfer, conveyance or other disposition (other than by way of merger or consolidation), in one transaction or a series of related transactions, of all or substantially all of the assets of the Company and its Subsidiaries, taken as a whole, to any Person or Group, other than a sale, lease, transfer, conveyance or other disposition to a special purpose entity that is a wholly-owned Subsidiary of the Company for project financing purposes; or

2

(e)     the stockholders of the Company adopt a plan or proposal for the liquidation, winding up or dissolution of the Company.

**2.11**   "**Code**" means the Internal Revenue Code of 1986, as amended, as now in effect or as hereafter amended, and any successor thereto. References in the Plan to any Code Section shall be deemed to include, as applicable, regulations promulgated under such Code Section.

**2.12**   "**Committee**" means a committee of, and designated from time to time by resolution of, the Board, which shall be constituted as provided in **Section 3.1.2** (or, if no Committee has been so designated, the Board).

**2.13**   "**Company**" means Venture Global LNG, Inc.

**2.14**   "**Controlling Interest**" shall have the meaning set forth in Treasury Regulation Section 1.414(c)-2(b)(2)(i).

**2.15**   "**Covered Employee**" means a Grantee who is a "covered employee" within the meaning of Code Section 162(m)(3).

**2.16**   "**Disability**" means the inability of a Grantee to perform each of the essential duties of such Grantee's position by reason of a medically determinable physical or mental impairment which is potentially permanent in character or which can be expected to last for a continuous period of not less than 12 months; *provided* that, with respect to rules regarding expiration of an Incentive Stock Option following termination of a Grantee's Service, Disability shall mean the inability of such Grantee to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

**2.17**   "**Disqualified Individual**" shall have the meaning set forth in Code Section 280G(c).

**2.18**   "**Effective Date**" means December 16, 2014.

**2.19**   "**Employee**" means, as of any date of determination, an employee (including an officer) of the Company or an Affiliate.

**2.20**   "**Exchange Act**" means the Securities Exchange Act of 1934, as amended, as now in effect or as hereafter amended.

**2.21**   "**Fair Market Value**" means the fair market value of a share of Stock for purposes of the Plan, which shall be determined as of any determination date as follows:

(a)     If on such date the shares of Stock are listed on a Stock Exchange, or are publicly traded on another Securities Market, the Fair Market Value of a share of Stock shall be the closing price of the Stock on such date as reported on such Stock Exchange or such Securities Market (*provided* that, if there is more than one such Stock Exchange or Securities Market, the Committee shall designate the appropriate Stock Exchange or Securities Market for purposes of the Fair Market Value determination).  If there is no such reported closing price on the determination date, the Fair Market Value of a share of Stock shall be the closing price of the Stock on the next preceding day on which any sale of Stock shall have been reported on such Stock Exchange or such Securities Market.

3

(b)     If on such date the shares of Stock are not listed on a Stock Exchange or publicly traded on a Securities Market, the Fair Market Value of a share of Stock shall be the value of the Stock as determined by the Committee by the reasonable application of a reasonable valuation method, in a manner consistent with Code Section 409A.

Notwithstanding this **Section 2.21** or **Section 14.4**, for purposes of determining taxable income and the amount of the related tax withholding obligation pursuant to **Section 14.4**, for any shares of Stock subject to an Option that are sold by or on behalf of a Grantee on the same date on which such shares may first be sold pursuant to the terms of the related Award Agreement, the Fair Market Value of such shares shall be the sale price of such shares on such date (or if sales of such shares are effectuated at more than one sale price, the weighted average sale price of such shares on such date).

**2.22**   "**Family Member**" means, with respect to any Grantee as of any date of determination, (a) a Person who is a spouse, former spouse, child, stepchild, grandchild, parent, stepparent, grandparent, niece, nephew, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother, sister, brother-in-law, or sister-in-law, including adoptive relationships, of such Grantee, (b) any Person sharing such Grantee's household (other than a tenant or employee), (c) a trust in which any one or more of the Persons specified in clauses (a) and (b) above (and such Grantee) own more than fifty percent (50%) of the beneficial interest, (d) a foundation in which any one or more of the Persons specified in clauses (a) and (b) above (and such Grantee) control the management of assets, and (e) any other entity in which one or more of the Persons specified in clauses (a) and (b) above (and such Grantee) own more than fifty percent (50%) of the voting interests.

**2.23**   "**Fully Diluted Basis**" means, as of any date of determination, the sum of (x) the number of shares of Voting Stock outstanding as of such date of determination plus (y) the number of shares of Voting Stock issuable upon the exercise, conversion or exchange of all then-outstanding warrants, options, convertible Capital Stock or indebtedness, exchangeable Capital Stock or indebtedness, or other rights exercisable for or convertible or exchangeable into, directly or indirectly, shares of Voting Stock, whether at the time of issue or upon the passage of time or upon the occurrence of some future event, and whether or not in the money as of such date of determination

**2.24**   "**Grant Date**" means, as determined by the Committee, the latest to occur of (a) the date as of which the Committee approves the Award, (b) the date on which the recipient of an Award first becomes eligible to receive an Award under **Article 6** hereof (e.g., in the case of a new hire, the first date on which such new hire performs any Service), or (c) such subsequent date specified by the Committee in the corporate action approving the Award.

**2.25**   "**Grantee**" means a Person who receives or holds an Award under the Plan.

**2.26**   "**Group**" shall have the meaning set forth in Sections 13(d) and 14(d)(2) of the Exchange Act.

**2.27**   "**Incentive Stock Option**" means an "incentive stock option" within the meaning of Code Section 422, or the corresponding provision of any subsequently enacted tax statute, as amended from time to time.

4

**2.28** **"Non-qualified Stock Option"** means an Option that is not an Incentive Stock Option.

**2.29** **"Non-Employee Director"** shall have the meaning set forth in Rule 16b-3 under the Exchange Act.

**2.30** **"Officer"** shall have the meaning set forth in Rule 16a-1(f) under the Exchange Act.

**2.31** **"Option"** means an option to purchase one or more shares of Stock pursuant to the Plan.

**2.32** **"Option Price"** means the exercise price for each share of Stock subject to an Option.

**2.33** **"Other Agreement"** means any agreement, contract, or understanding heretofore or hereafter entered into by a Grantee with the Company or an Affiliate, except an agreement, contract, or understanding that expressly addresses Code Section 280G or Code Section 4999.

**2.34** **"Outside Director"** shall have the meaning set forth in Code Section 162(m)(4)(C)(i).

**2.35** **"Parachute Payment"** means a "parachute payment" within the meaning of Code Section 280G(b)(2) as then in effect.

**2.36** **"Person"** means an individual, a corporation, a partnership, a limited liability company, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof; *provided* that for purposes of **Section 2.10(a)** and **Section 2.10(d)**, Person shall have the meaning set forth in Sections 13(d) and 14(d)(2) of the Exchange Act.

**2.37** **"Plan"** means the Company's 2014 Stock Option Plan, as amended from time to time.

**2.38** **"Prior Stockholders"** mean the holders of securities that represented one hundred percent (100%) of the Voting Stock of the Company immediately prior to a merger or consolidation involving the Company (or other securities into which such securities are converted as part of such merger or consolidation transaction).

**2.39** **"Securities Act"** means the Securities Act of 1933, as amended, as now in effect or as hereafter amended.

**2.40** **"Securities Market"** means an established securities market.

**2.41** **"Separation from Service"** shall have the meaning set forth in Code Section 409A and the regulations promulgated thereunder.

**2.42** **"Service"** means service qualifying a Grantee as a Service Provider to the Company or an Affiliate. Unless otherwise provided in the applicable Award Agreement, a Grantee's change in position or duties shall not result in interrupted or terminated Service, so long as such Grantee continues to be a Service Provider to the Company or an Affiliate. Subject to the preceding sentence, any determination by the Committee whether a termination of Service shall have occurred

5

for purposes of the Plan shall be final, binding and conclusive. If a Service Provider's employment or other service relationship is with an Affiliate and the applicable entity ceases to be an Affiliate, a termination of Service shall be deemed to have occurred when such entity ceases to be an Affiliate unless the Service Provider transfers his or her employment or other service relationship to the Company or any other Affiliate.

2.43    "**Service Provider**" means an Employee, officer, or director of the Company or an Affiliate, or a consultant or adviser (who is a natural Person) to the Company or an Affiliate currently providing services to the Company or an Affiliate.

2.44    "**Service Recipient Stock**" shall have the meaning set forth in Code Section 409A and the regulations promulgated thereunder.

2.45    "**Short-Term Deferral Period**" shall have the meaning set forth in Code Section 409A and the regulations promulgated thereunder.

2.46    "**Stock**" means the Series A Common Stock, par value $0.01 per share, of the Company, or any security which shares of Stock may be changed into or for which shares of Stock may be exchanged as provided in **Section 13.1**.

2.47    "**Stockholders Agreement**" means the Company's stockholders agreement, as it may be amended from time to time.

2.48    "**Stock Exchange**" means an established national or regional stock exchange.

2.49    "**Subsidiary**" means any corporation (other than the Company) or non-corporate entity with respect to which the Company owns, directly or indirectly, fifty percent (50%) or more of the total combined voting power of all classes of stock, membership interests or other ownership interests of any class or kind ordinarily having the power to vote for the directors, managers or other voting members of the governing body of such corporation or non-corporate entity. In addition, any other entity may be designated by the Committee as a Subsidiary, *provided* that (a) such entity could be considered as a subsidiary according to generally accepted accounting principles in the United States of America, and (b) an Award would be considered to be granted in respect of Service Recipient Stock under Code Section 409A.

2.50    "**Substitute Award**" means an Award granted upon assumption of, or in substitution for, outstanding awards previously granted under a compensatory plan by a business entity acquired or to be acquired by the Company or an Affiliate or with which the Company or an Affiliate has combined or will combine.

2.51    "**Ten Percent Stockholder**" means a natural Person who owns more than ten percent (10%) of the total combined voting power of all classes of outstanding voting securities of the Company, the Company's parent (if any) or any of the Company's Subsidiaries. In determining stock ownership, the attribution rules of Code Section 424(d) shall be applied.

2.52    "**Voting Stock**" means, with respect to any Person, Capital Stock of any class or kind ordinarily having the power to vote for the election of directors, managers or other voting members of the governing body of such Person.

## 3.    ADMINISTRATION OF THE PLAN

### 3.1    Committee.

#### 3.1.1    Powers and Authorities.

The Committee shall administer the Plan and shall have such powers and authorities related to the administration of the Plan as are consistent with the Company's certificate of incorporation and bylaws and Applicable Laws. Without limiting the generality of the foregoing, the Committee shall have full power and authority to take all actions and to make all determinations required or provided for under the Plan, any Award or any Award Agreement, and shall have full power and authority to take all such other actions and make all such other determinations not inconsistent with the specific terms and provisions of the Plan which the Committee deems to be necessary or appropriate to the administration of the Plan, any Award or any Award Agreement. All such actions and determinations shall be made by (a) the affirmative vote of a majority of the members of the Committee present at a meeting at which a quorum is present, or (b) the unanimous consent of the members of the Committee executed in writing in accordance with the Company's certificate of incorporation and bylaws and Applicable Laws. Unless otherwise expressly determined by the Board, the Committee shall have the authority to interpret and construe all provisions of the Plan, any Award and any Award Agreement, and any such interpretation or construction, and any other determination contemplated to be made under the Plan or any Award Agreement, by the Committee shall be final, binding and conclusive whether or not expressly provided for in any provision of the Plan, such Award or such Award Agreement.

In the event that the Plan, any Award or any Award Agreement provides for any action to be taken by the Board or any determination to be made by the Board, such action may be taken or such determination may be made by the Committee constituted in accordance with this **Section 3.1** if the Board has delegated the power and authority to do so to such Committee.

#### 3.1.2    Composition of Committee.

The Committee shall be a committee composed of not fewer than two directors of the Company designated by the Board to administer the Plan. Each member of the Committee shall be, if applicable, a) a Non-Employee Director, (b) an Outside Director and (c) an independent director in accordance with the rules of any Stock Exchange on which the Stock is listed; *provided* that any action taken by the Committee shall be valid and effective whether or not members of the Committee at the time of such action are later determined not to have satisfied the requirements for membership set forth in this **Section 3.1.2** or otherwise provided in any charter of the Committee. Without limiting the generality of the foregoing, the Committee may be the Compensation Committee of the Board or a subcommittee thereof if the Compensation Committee of the Board or such subcommittee satisfies the foregoing requirements.

#### 3.1.3    Other Committees.

The Board also may appoint one or more committees of the Board, each composed of one or more directors of the Company who need not be Outside Directors, which may administer the Plan with respect to Grantees who are not Officers or directors of the Company, may grant Awards under the Plan to such Grantees, and may determine all terms of such Awards, subject, if applicable, to the requirements of Rule 16b-3 under the Exchange Act, Code Section 162(m) and the rules of any Stock Exchange on which the Stock is listed.

\\NY - 043006/000001 - 3687828 v4

**3.1.4**    Delegation by Committee.

To the extent permitted by Applicable Laws, the Committee may by resolution delegate some or all of its authority with respect to the Plan and Awards to the Chief Executive Officer of the Company and/or any other officer of the Company designated by the Committee, provided that, if the shares of Stock are listed on a Stock Exchange or are publicly traded on a Securities Market, or if otherwise required by Applicable Law, the Committee may not delegate its authority hereunder (a) to make Awards to directors of the Company, (b) to make Awards to Employees who are (i) Officers, (ii) Covered Employees or (iii) officers of the Company who are delegated authority by the Committee pursuant to this **Section 3.1.4**, or (c) to interpret the Plan or any Award. Any delegation hereunder will be subject to the restrictions and limits that the Committee specifies at the time of such delegation or thereafter. Nothing in the Plan will be construed as obligating the Committee to delegate authority to any officer of the Company, and the Committee may at any time rescind the authority delegated to an officer of the Company appointed hereunder and delegate authority to one or more other officers of the Company. At all times, an officer of the Company delegated authority pursuant to this **Section 3.1.4** will serve in such capacity at the pleasure of the Committee. Any action undertaken by any such officer of the Company in accordance with the Committee's delegation of authority will have the same force and effect as if undertaken directly by the Committee, and any reference in the Plan to the "Committee" will, to the extent consistent with the terms and limitations of such delegation, be deemed to include a reference to each such officer.

**3.2    Board**.

The Board from time to time may exercise any or all of the powers and authorities related to the administration and implementation of the Plan, as set forth in **Section 3.1** and other applicable provisions of the Plan, as the Board shall determine, consistent with the Company's certificate of incorporation and bylaws and Applicable Laws.

**3.3    Terms of Awards**.

**3.3.1    Committee Authority**.

Subject to the other terms and conditions of the Plan, the Committee shall have full and final authority to:

(a)    designate Grantees;

(b)    determine the type of Option to be awarded to a Grantee;

(c)    determine the number of shares of Stock to be subject to an Award;

(d)    establish the terms and conditions of each Award (including the Option Price of any Option), the nature and duration of any restriction or condition (or provision for lapse thereof) relating to the vesting, exercise, transfer, or forfeiture of an Award or the shares of Stock subject thereto, the treatment of an Award in the event of a Change in Control (subject to applicable agreements), and any terms or conditions that may be necessary to qualify Options as Incentive Stock Options;

(e)    prescribe the form of each Award Agreement evidencing an Award; and

8

(f)    subject to the limitation on repricing in **Section 3.4**, amend, modify or supplement the terms of any outstanding Award, which authority shall include the authority, in order to effectuate the purposes of the Plan but without amending the Plan, to make Awards or to modify outstanding Awards made to eligible natural Persons who are foreign nationals or are natural Persons who are employed outside the United States to reflect differences in local law, tax policy, or custom, *provided* that, notwithstanding the foregoing, no amendment, modification or supplement of the terms of any outstanding Award shall, without the consent of the Grantee thereof, impair such Grantee's rights under such Award.

The Committee shall have the right, in its discretion, to make Awards in substitution or exchange for any award granted under another compensatory plan of the Company, an Affiliate, or any business entity acquired or to be acquired by the Company or an Affiliate or with which the Company or an Affiliate has combined or will combine.

### 3.3.2    Forfeiture; Recoupment.

The Committee may reserve the right in an Award Agreement to cause a forfeiture of the gain realized by a Grantee with respect to an Award thereunder on account of actions taken by, or failed to be taken by, such Grantee in violation or breach of or in conflict with any (a) employment agreement, (b) non-competition agreement, (c) agreement prohibiting solicitation of Employees or clients of the Company or an Affiliate, (d) confidentiality obligation with respect to the Company or an Affiliate, (e) Company policy or procedure, (f) other agreement, or (g) any other obligation of such Grantee to the Company or an Affiliate, as and to the extent specified in such Award Agreement. The Committee may annul an outstanding Award if the Grantee thereof is an Employee of the Company or an Affiliate and is terminated for Cause.

Any Award granted pursuant to the Plan shall be subject to mandatory repayment by the Grantee to the Company to the extent the Grantee is, or in the future becomes, subject to (x) any Company "clawback" or recoupment policy that is adopted to comply with the requirements of any Applicable Law, rule or regulation, or (y) any law, rule or regulation which imposes mandatory recoupment, under circumstances set forth in such law, rule or regulation.

### 3.4    No Repricing Without Stockholder Approval.

Except in connection with a corporate transaction involving the Company (including, without limitation, any stock dividend, distribution (whether in the form of cash, shares of Stock, other securities or other property), stock split, extraordinary cash dividend, recapitalization, change in control, reorganization, merger, consolidation, split-up, spin-off, combination, repurchase or exchange of shares of Stock or other securities or similar transaction), during any time when the Company has a class of equity security registered under Section 12 of the Exchange Act, the Company may not, without obtaining stockholder approval: (a) amend the terms of outstanding Options to reduce the exercise price of such outstanding Options; (b) cancel outstanding Options in exchange for or substitution of Options with an exercise price that is less than the exercise price of the original Options; or (c) cancel outstanding Options with an exercise price above the current stock price in exchange for cash or other securities.  Notwithstanding the foregoing, during any time when the Company has a class of equity security registered under Section 12 of the Exchange Act, the Committee may not grant Options in replacement of Options previously granted under this Plan or any other compensation plan of the Company or cancel an outstanding Option in exchange for cash (other than cash with a value equal to the excess of the Fair Market Value of the Stock subject to

such Option at the time of cancellation over the exercise or grant price for such Stock), or may the Committee amend outstanding Options (including amendments to adjust an Option price) unless such replacement or adjustment (i) is subject to and approved by the Company's stockholders or (ii) would not be deemed to be a repricing under the rules any Stock Exchange on which the Stock is listed.

### 3.5    No Liability.

No member of the Board or the Committee shall be liable for any action or determination made in good faith with respect to the Plan or any Award or Award Agreement.

### 3.6    Registration; Share Certificates.

Notwithstanding any provision of the Plan to the contrary, the ownership of the shares of Stock issued under the Plan may be evidenced in such a manner as the Committee, in its sole discretion, deems appropriate, including by book-entry or direct registration (including transaction advices) or the issuance of one or more share certificates.

## 4.    STOCK SUBJECT TO THE PLAN

### 4.1    Number of Shares of Stock Available for Awards.

Subject to such additional shares of Stock as shall be available for issuance under the Plan pursuant to **Section 4.2**, and subject to adjustment pursuant to **Article 13**, the maximum number of shares of Stock available for issuance under the Plan shall be fifty thousand (50,000) shares of Stock. Such shares of Stock may be authorized and unissued shares of Stock or treasury shares of Stock or any combination of the foregoing, as may be determined from time to time by the Board or by the Committee. Any or all of the shares of Stock available for issuance under the Plan shall be available for issuance pursuant to the Incentive Stock Options.

### 4.2    Adjustments in Authorized Shares of Stock.

In connection with mergers, reorganizations, separations, or other transactions to which Code Section 424(a) applies, the Committee shall have the right to cause the Company to assume awards previously granted under a compensatory plan by another business entity that is a party to such transaction and to substitute Awards under the Plan for such awards. The number of shares of Stock available for issuance under the Plan pursuant to **Section 4.1** shall be increased by the number of shares of Stock subject to any such assumed awards and substitute Awards. Shares available for issuance under a shareholder-approved plan of a business entity that is a party to such transaction (as appropriately adjusted, if necessary, to reflect such transaction) may be used for Awards under the Plan and shall not reduce the number of shares of Stock otherwise available for issuance under the Plan, subject to applicable rules of any Stock Exchange on which the Stock is listed.

### 4.3    Share Usage.

Shares of Stock covered by an Award shall be counted as used as of the Grant Date for purposes of calculating the number of shares of Stock available for issuance under **Section 4.1**. Any shares of Stock that are subject to Awards will be counted against the share issuance limit set forth in **Section 4.1** as one share of Stock for every one share of Stock subject to an Award.  If any

10

shares covered by an Award are not purchased or are forfeited or expire, or if an Award otherwise terminates without delivery of any Stock subject thereto or is settled in cash in lieu of shares, then the number of shares of Stock counted against the aggregate number of shares available under the Plan with respect to such Award shall, to the extent of any such forfeiture, termination, or expiration again be available for making Awards under the Plan. The number of shares of Stock available for issuance under the Plan will not be increased by the number of shares of Stock (a) tendered or withheld or subject to an Award granted under the Plan surrendered in connection with the purchase of shares of Stock upon exercise of an Option as provided in **Section 9.2**, (b) deducted or delivered from payment of an Award granted under the Plan in connection with the Company's tax withholding obligations as provided in **Section 14.4**, or (c) purchased by the Company with proceeds from Option exercises.

5.    **TERM; AMENDMENT AND TERMINATION**

5.1    **Term**.

The Plan shall terminate automatically ten (10) years after the Effective Date and may be terminated on any earlier date as provided in **Section 5.2**.

5.2    **Amendment and Termination**.

The Board may, at any time and from time to time, amend, suspend or terminate the Plan as to any shares of Stock as to which Awards have not been made. The effectiveness of any amendment to the Plan shall be contingent on approval of such amendment by the Company's stockholders to the extent provided by the Board or required by Applicable Laws (including the rules of any Stock Exchange on which the Stock is then listed. No amendment, suspension or termination of the Plan shall impair rights or obligations under any Award theretofore made under the Plan without the consent of the Grantee thereof.

6.    **AWARD ELIGIBILITY AND LIMITATIONS**

6.1    **Eligible Grantees**.

Subject to this **Article 6**, Awards may be made under the Plan to (a) any Service Provider, as the Committee shall determine and designate from time to time and (b) any other individual whose participation in the Plan is determined to be in the best interests of the Company by the Committee.

6.2    **Stand-Alone, Additional and Substitute Awards**.

Subject to **Section 3.4**, Awards granted under the Plan may, in the discretion of the Committee, be granted either alone or in addition to, or in substitution or exchange for, (a) any other Award, (b) any award granted under another plan of the Company, an Affiliate, or any business entity that has been a party to a transaction with the Company or an Affiliate, or (c) any other right of a Grantee to receive payment from the Company or an Affiliate. Such additional and substitute or exchange Awards may be granted at any time. If an Award is granted in substitution or exchange for another Award, or for an award granted under another plan of the Company, an Affiliate, or any business entity that has been a party to a transaction with the Company or an Affiliate, the Committee shall require the surrender of such other Award or award under such other plan in consideration for the grant of such substitute or exchange Award. In addition, Awards may be

11

granted in lieu of cash compensation, including in lieu of cash payments under other plans of the Company or an Affiliate. Notwithstanding **Section 8.1**, but subject to **Section 3.4**, the Option Price of an Option that is a Substitute Award may be less than one hundred percent (100%) of the Fair Market Value of a share of Stock on the original Grant Date; *provided* that such Option Price is determined in accordance with the principles of Code Section 424 for any Incentive Stock Option and consistent with Code Section 409A for any other Option.

## 7.    AWARD AGREEMENT

Each Award granted pursuant to the Plan shall be evidenced by an Award Agreement, which shall be in such form or forms as the Committee shall from time to time determine. Award Agreements employed under the Plan from time to time or at the same time need not contain similar provisions, but shall be consistent with the terms of the Plan.  Each Award Agreement shall specify whether the Options that are subject to the Award Agreement are intended to be Non-qualified Stock Options or Incentive Stock Options, and, in the absence of such specification, such Options shall be deemed to constitute Non-qualified Stock Options.

## 8.    TERMS AND CONDITIONS OF OPTIONS

### 8.1    Option Price.

The Option Price of each Option shall be fixed by the Committee and stated in the Award Agreement evidencing such Option. Except in the case of Substitute Awards, the Option Price of each Option shall be at least the Fair Market Value of one (1) share of Stock on the Grant Date; *provided* that in the event that a Grantee is a Ten Percent Stockholder, the Option Price of an Option granted to such Grantee that is intended to be an Incentive Stock Option shall be not less than one hundred ten percent (110%) of the Fair Market Value of one (1) share of Stock on the Grant Date. In no case shall the Option Price of any Option be less than the par value of a share of Stock.

### 8.2    Vesting and Exercisability.

Subject to **Sections 8.3** and **13.3**, each Option granted under the Plan shall become vested and/or exercisable at such times and under such conditions as shall be determined by the Committee and stated in the Award Agreement, in another agreement with the Grantee or otherwise in writing.

### 8.3    Term.

Each Option granted under the Plan shall terminate, and all rights to purchase shares of Stock thereunder shall cease, upon the expiration of ten (10) years from the Grant Date of such Option, or under such circumstances and on such date prior thereto as is set forth in the Plan or as may be fixed by the Committee and stated in the Award Agreement relating to such Option; *provided* that in the event that the Grantee is a Ten Percent Stockholder, an Option granted to such Grantee that is intended to be an Incentive Stock Option shall not be exercisable after the expiration of five (5) years from its Grant Date; and *provided, further,* that, to the extent deemed necessary or appropriate by the Committee to reflect differences in local law, tax policy, or custom with respect to any Option granted to a Grantee who is a foreign national or is a natural Person who is employed outside the United States, such Option may terminate, and all rights to purchase shares of Stock thereunder may cease, upon the expiration of such period longer than ten (10) years from the Grant Date of such Option as the Committee shall determine.

12

**8.4    Termination of Service.**

Each Award Agreement with respect to the grant of an Option shall set forth the extent to which the Grantee thereof, if at all, shall have the right to exercise such Option following termination of such Grantee's Service. Such provisions shall be determined in the sole discretion of the Committee, need not be uniform among all Options issued pursuant to the Plan, and may reflect distinctions based on the reasons for termination of Service.

**8.5    Limitations on Exercise of Option.**

Notwithstanding any other provision of the Plan, in no event may any Option be exercised, in whole or in part, after the occurrence of an event referred to in **Article 13** which results in the termination of such Option.

**8.6    Method of Exercise.**

Subject to the terms of **Article 9** and **Section 14.4**, an Option that is exercisable may be exercised by the Grantee's delivery to the Company or its designee or agent of notice of exercise on any business day, at the Company's principal office or the office of such designee or agent, on the form specified by the Company and in accordance with any additional procedures specified by the Committee. Such notice shall specify the number of shares of Stock with respect to which such Option is being exercised and shall be accompanied by payment in full of the Option Price of the shares of Stock for which such Option is being exercised plus the amount (if any) of federal and/or other taxes which the Company may, in its judgment, be required to withhold with respect to the exercise of such Option.

**8.7    Rights of Holders of Options.**

Unless otherwise stated in the applicable Award Agreement, a Grantee or other Person holding or exercising an Option shall have none of the rights of a stockholder of the Company (for example, the right to receive cash or dividend payments or distributions attributable to the shares of Stock subject to such Option, to direct the voting of the shares of Stock subject to such Option, or to receive notice of any meeting of the Company's stockholders) until the shares of Stock subject thereto are fully paid and issued to such Grantee or other Person. Except as provided in **Article 13**, no adjustment shall be made for dividends, distributions or other rights with respect to any shares of Stock subject to an Option for which the record date is prior to the date of issuance of such shares of Stock.

**8.8    Delivery of Stock.**

Promptly after the exercise of an Option by a Grantee and the payment in full of the Option Price with respect thereto, such Grantee shall be entitled to receive such evidence of such Grantee's ownership of the shares of Stock subject to such Option as shall be consistent with **Section 3.6**.

**8.9    Transferability of Options.**

Except as provided in **Section 8.10**, during the lifetime of a Grantee of an Option, only such Grantee (or, in the event of such Grantee's legal incapacity or incompetency, such Grantee's guardian or legal representative) may exercise such Option. Except as provided in **Section 8.10**, no

13

Option shall be assignable or transferable by the Grantee to whom it is granted, other than by will or the laws of descent and distribution.

**8.10    Family Transfers.**

If authorized in the applicable Award Agreement and by the Committee, in its sole discretion, a Grantee may transfer, not for value, all or part of an Option which is not an Incentive Stock Option to any Family Member. For the purpose of this **Section 8.10**, a transfer "not for value" is a transfer which is (a) a gift, (b) a transfer under a domestic relations order in settlement of marital property rights or (c) unless Applicable Laws do not permit such transfer, a transfer to an entity in which more than fifty percent (50%) of the voting interests are owned by Family Members (and/or the Grantee) in exchange for an interest in such entity. Following a transfer under this **Section 8.10**, any such Option shall continue to be subject to the same terms and conditions as were applicable immediately prior to such transfer, and the shares of Stock acquired pursuant to such Option shall be subject to the same restrictions with respect to transfers of such shares of Stock as would have applied to the Grantee thereof. Subsequent transfers of transferred Options shall be prohibited except to Family Members of the original Grantee in accordance with this **Section 8.10** or by will or the laws of descent and distribution. The provisions of **Section 8.4** relating to termination of Service shall continue to be applied with respect to the original Grantee of the Option, following which such Option shall be exercisable by the transferee only to the extent, and for the periods specified, in **Section 8.4**.

**8.11    Limitations on Incentive Stock Options.**

An Option shall constitute an Incentive Stock Option only (a) if the Grantee of such Option is an Employee of the Company or any corporate Subsidiary, (b) to the extent specifically provided in the related Award Agreement and (c) to the extent that the aggregate Fair Market Value (determined at the time such Option is granted) of the shares of Stock with respect to which all Incentive Stock Options held by such Grantee become exercisable for the first time during any calendar year (under the Plan and all other plans of the Company and its Affiliates) does not exceed one hundred thousand dollars ($100,000). Except to the extent provided in the regulations under Code Section 422, this limitation shall be applied by taking Options into account in the order in which they were granted.

**8.12    Notice of Disqualifying Disposition.**

If any Grantee shall make any disposition of shares of Stock issued pursuant to the exercise of an Incentive Stock Option under the circumstances provided in Code Section 421(b) (relating to certain disqualifying dispositions), such Grantee shall notify the Company of such disposition within ten (10) days thereof.

**9.    FORM OF PAYMENT FOR OPTIONS**

**9.1    General Rule.**

Payment of the Option Price for the shares of Stock purchased pursuant to the exercise of an Option shall be made in cash or in cash equivalents acceptable to the Company.

**9.2    Surrender of Shares of Stock.**

To the extent that the applicable Award Agreement so provides, payment of the Option Price for shares of Stock purchased pursuant to the exercise of an Option may be made all or in part through the tender or attestation to the Company of shares of Stock, which shall be valued, for purposes of determining the extent to which such Option Price has been paid thereby, at their Fair Market Value on the date of such tender or attestation.

**9.3    Cashless Exercise.**

To the extent permitted by Applicable Laws and to the extent the Award Agreement so provides, payment of the Option Price for shares of Stock purchased pursuant to the exercise of an Option may be made all or in part by delivery (on a form acceptable to the Committee) of an irrevocable direction to a licensed securities broker acceptable to the Company to sell shares of Stock and to deliver all or part of the proceeds of such sale to the Company in payment of such Option Price and any withholding taxes described in **Section 14.4**, or, with the consent of the Company, by issuing the number of shares of Stock equal in value to the difference between such Option Price and the Fair Market Value of the shares of Stock subject to the portion of such Option being exercised.

**9.4    Other Forms of Payment.**

To the extent the Award Agreement so provides and/or unless otherwise specified in an Award Agreement, payment of the Option Price for shares of Stock purchased pursuant to exercise of an Option may be made in any other form that is consistent with Applicable Laws, including by withholding shares of Stock that would otherwise vest or be issuable in an amount equal to the Option Price and the required tax withholding amount.

**10.    Restrictions on Transfer of Shares of Stock**

**10.1    Right of First Refusal.**

Any shares of Stock acquired by, or delivered or issued to, the Grantee under the Plan may be subject to a right of first refusal of the Company as the Board may determine, consistent with Applicable Law.  Any such right shall be set forth in an Award Agreement or in a stockholders or other similar agreement.

**10.2    Repurchase and Other Rights.**

Stock issued upon exercise of an Option may be subject to such right of repurchase upon termination of Service or other transfer restrictions as the Board may determine, consistent with Applicable Law.  Any additional restrictions shall be set forth in an Award Agreement or in the Stockholders Agreement.

**10.3    Legend.**

In order to enforce the restrictions imposed upon shares of Stock under this Plan or as provided in an Award Agreement, the Board may cause a legend or legends to be placed on any certificate representing shares issued pursuant to this Plan that complies with the applicable securities laws.

**11.    PARACHUTE LIMITATIONS**

If any Grantee is a Disqualified Individual, then, notwithstanding any other provision of the Plan or of any Other Agreement, and notwithstanding any Benefit Arrangement, any right of the Grantee to any exercise, vesting, payment, or benefit under the Plan shall be reduced or eliminated:

(a)    to the extent that such right to exercise, vesting, payment, or benefit, taking into account all other rights, payments, or benefits to or for the Grantee under the Plan, all Other Agreements, and all Benefit Arrangements, would cause any exercise, vesting, payment, or benefit to the Grantee under the Plan to be considered a Parachute Payment; and

(b)    if, as a result of receiving such Parachute Payment, the aggregate after-tax amounts received by the Grantee from the Company under the Plan, all Other Agreements, and all Benefit Arrangements would be less than the maximum after-tax amount that could be received by the Grantee without causing any such payment or benefit to be considered a Parachute Payment.

The Company shall accomplish such reduction by first reducing or eliminating any cash payments (with the payments to be made furthest in the future being reduced first), then by reducing or eliminating any accelerated vesting of Options, then by reducing or eliminating any other remaining Parachute Payments.

**12.    REQUIREMENTS OF LAW**

**12.1    General.**

The Company shall not be required to offer, sell or issue any shares of Stock under any Award, whether pursuant to the exercise of an Option or otherwise, if the offer, sale or issuance of such shares of Stock would constitute a violation by the Grantee, the Company or an Affiliate, or any other Person, of any provision of Applicable Laws, including any federal or state securities laws or regulations. If at any time the Company shall determine, in its discretion, that the listing, registration or qualification of any shares of Stock subject to an Award upon any securities exchange or under any governmental regulatory body is necessary or desirable as a condition of, or in connection with, the offering, issuance, sale or purchase of shares of Stock in connection with any Award, no shares of Stock may be offered, issued or sold to the Grantee or any other Person under such Award, whether pursuant to the exercise of an Option or otherwise, unless such listing, registration or qualification shall have been effected or obtained free of any conditions not acceptable to the Company, and any delay caused thereby shall in no way affect the date of termination of such Award. Without limiting the generality of the foregoing, upon the exercise of any Option that may be settled in shares of Stock, unless a registration statement under the Securities Act is in effect with respect to the shares of Stock subject to such Award, the Company shall not be required to offer, sell or issue such shares of Stock unless the Committee shall have received evidence satisfactory to it that the Grantee or any other Person exercising such Option may acquire such shares of Stock pursuant to an exemption from registration under the Securities Act. Any determination in this connection by the Committee shall be final, binding, and conclusive. The Company may register, but shall in no event be obligated to register, any shares of Stock or other securities issuable pursuant to the Plan pursuant to the Securities Act. The Company shall not be obligated to take any affirmative action in order to cause the exercise of an Option or the issuance of shares of Stock or other securities issuable pursuant to the Plan or any Award to comply with any Applicable Laws. As to any jurisdiction that expressly imposes the requirement that an Option that may be settled in shares of

16

Stock shall not be exercisable until the shares of Stock subject to such Option are registered under the securities laws thereof or are exempt from such registration, the exercise of such Option under circumstances in which the laws of such jurisdiction apply shall be deemed conditioned upon the effectiveness of such registration or the availability of such an exemption.

**12.2    Rule 16b-3.**

During any time when the Company has a class of equity security registered under Section 12 of the Exchange Act, it is the intention of the Company that Awards pursuant to the Plan and the exercise of Options granted hereunder that would otherwise be subject to Section 16(b) of the Exchange Act shall qualify for the exemption provided by Rule 16b-3 under the Exchange Act. To the extent that any provision of the Plan or action by the Committee does not comply with the requirements of such Rule 16b-3, such provision or action shall be deemed inoperative with respect to such Awards to the extent permitted by Applicable Laws and deemed advisable by the Committee, and shall not affect the validity of the Plan. In the event that such Rule 16b-3 is revised or replaced, the Board may exercise its discretion to modify the Plan in any respect necessary or advisable in its judgment to satisfy the requirements of, or to permit the Company to avail itself of the benefits of, the revised exemption or its replacement.

**13.    EFFECT OF CHANGES IN CAPITALIZATION**

**13.1    Changes in Stock.**

If the number of outstanding shares of Stock is increased or decreased or the shares of Stock are changed into or exchanged for a different number of shares or kind of capital stock or other securities of the Company on account of any recapitalization, reclassification, stock split, reverse stock split, spin-off, combination of stock, exchange of stock, stock dividend or other distribution payable in capital stock, or other increase or decrease in shares of Stock effected without receipt of consideration by the Company occurring after the Effective Date, the number and kinds of shares of stock for which grants of Options may be made under the Plan shall be adjusted proportionately and accordingly by the Committee. In addition, the number and kind of shares of stock for which Awards are outstanding shall be adjusted proportionately and accordingly by the Committee so that the proportionate interest of the Grantee therein immediately following such event shall, to the extent practicable, be the same as immediately before such event. Any such adjustment in outstanding Options shall not change the aggregate Option Price payable with respect to shares that are subject to the unexercised portion of such outstanding Options, but shall include a corresponding proportionate adjustment in the per share Option Price, as the case may be. The conversion of any convertible securities of the Company shall not be treated as an increase in shares effected without receipt of consideration. Notwithstanding the foregoing, in the event of any distribution to the Company's stockholders of securities of any other entity or other assets (including an extraordinary dividend, but excluding a non-extraordinary dividend, declared and paid by the Company) without receipt of consideration by the Company, the Board or the Committee constituted pursuant to **Section 3.1.2** shall, in such manner as the Board or the Committee deems appropriate, adjust (a) the number and kind of shares of stock subject to outstanding Awards and/or (b) the aggregate and per share Option Price of outstanding Options as required to reflect such distribution.

17

**13.2    Reorganization in Which the Company Is the Surviving Entity Which Does not Constitute a Change in Control**.

Subject to **Section 13.3**, if the Company shall be the surviving entity in any reorganization, merger or consolidation of the Company with one or more other entities which does not constitute a Change in Control, any Option theretofore granted pursuant to the Plan shall pertain to and apply to the securities to which a holder of the number of shares of Stock subject to such Option would have been entitled immediately following such reorganization, merger or consolidation, with a corresponding proportionate adjustment of the per share Option Price so that the aggregate Option Price thereafter shall be the same as the aggregate Option Price of the shares of Stock remaining subject to the Option as in effect immediately prior to such reorganization, merger, or consolidation. Subject to any contrary language in an Award Agreement or in another agreement with the Grantee, or otherwise set forth in writing, any restrictions applicable to such Award shall apply as well to any replacement shares received by the Grantee as a result of such reorganization, merger or consolidation.

**13.3    Change in Control in which Awards are not Assumed**.

Except as otherwise provided in the applicable Award Agreement or in another agreement with the Grantee, or as otherwise set forth in writing, upon the occurrence of a Change in Control in which outstanding Options are not being assumed or continued, either of the following two actions shall be taken with respect to such Award, to the extent not assumed or continued:

(a)      fifteen (15) days prior to the scheduled consummation of such Change in Control, all Options outstanding hereunder shall become immediately exercisable and shall remain exercisable for a period of fifteen (15) days, which exercise shall be effective upon such consummation; and/or

(b)      the Committee may elect, in its sole discretion, to cancel any outstanding Options and pay or deliver, or cause to be paid or delivered, to the holder thereof an amount in cash or securities having a value (as determined by the Committee acting in good faith) equal to the product of the number of shares of Stock subject to such Options multiplied by the amount, if any, by which (x) the formula or fixed price per share paid to holders of shares of Stock pursuant to such transaction exceeds (y) the Option Price applicable to such Options.

With respect to the Company's establishment of an exercise window, (a) any exercise of an Option during the fifteen (15)-day period referred to above shall be conditioned upon the consummation of the applicable Change in Control and shall be effective only immediately before the consummation thereof, and (b) upon consummation of any Change in Control, the Plan and all outstanding but unexercised Options shall terminate. The Committee shall send notice of an event that shall result in such a termination to all natural Persons and entities who hold Options not later than the time at which the Company gives notice thereof to its stockholders.

**13.4    Change in Control in which Awards are Assumed**.

Except as otherwise provided in the applicable Award Agreement or in another agreement with the Grantee, or as otherwise set forth in writing, upon the occurrence of a Change in Control in which outstanding Options are being assumed or continued, the following provisions shall apply to such Options, to the extent assumed or continued:

18

The Plan and the Options granted under the Plan shall continue in the manner and under the terms so provided in the event of any Change in Control to the extent that provision is made in writing in connection with such Change in Control for the assumption or continuation of such Options, or for the substitution for such Options of new stock options relating to the stock of a successor entity, or a parent or subsidiary thereof, with appropriate adjustments as to the number of shares (disregarding any consideration that is not common stock) and option exercise prices.

### 13.5    Adjustments

Adjustments under this **Article 13** related to shares of Stock or other securities of the Company shall be made by the Committee, whose determination in that respect shall be final, binding and conclusive. No fractional shares or other securities shall be issued pursuant to any such adjustment, and any fractions resulting from any such adjustment shall be eliminated in each case by rounding downward to the nearest whole share. The Committee may provide in the applicable Award Agreement at the time of grant, in another agreement with the Grantee, or otherwise in writing at any time thereafter with the consent of the Grantee, for different provisions to apply to an Award in place of those provided in **Sections 13.1, 13.2, 13.3 and 13.4**. This **Article 13** shall not limit the Committee's ability to provide for alternative treatment of Awards outstanding under the Plan in the event of a change in control event involving the Company that is not a Change in Control.

### 13.6    No Limitations on Company.

The making of Awards pursuant to the Plan shall not affect or limit in any way the right or power of the Company to make adjustments, reclassifications, reorganizations, or changes of its capital or business structure or to merge, consolidate, dissolve, or liquidate, or to sell or transfer all or any part of its business or assets (including all or any part of the business or assets of any Subsidiary or other Affiliate) or engage in any other transaction or activity.

## 14.    GENERAL PROVISIONS

### 14.1    Stockholders Agreement

As a condition precedent to an Award, the exercise of an Option, or to the delivery of shares of Stock issued pursuant to any Option, the Grantee or his Family Member, as the case may be, shall become a party to the Stockholders Agreement or any other agreement regarding the Stock, in such forms as the Board may determine from time to time.  Any shares of Stock acquired pursuant to the Plan shall be subject in all cases to the provisions of the Stockholders Agreement.  In the event of any inconsistency between the Plan, an Award Agreement and the Stockholders Agreement, the provisions of the Stockholders Agreement shall control.

### 14.2    Disclaimer of Rights.

No provision in the Plan or in any Award or Award Agreement shall be construed to confer upon any individual the right to remain in the employ or Service of the Company or an Affiliate, or to interfere in any way with any contractual or other right or authority of the Company or an Affiliate either to increase or decrease the compensation or other payments to any natural Person or entity at any time, or to terminate any employment or other relationship between any natural Person or entity and the Company or an Affiliate. In addition, notwithstanding anything contained in the Plan to the contrary, unless otherwise stated in the applicable Award Agreement, in another agreement with the Grantee, or otherwise in writing, no Award granted under the Plan shall be affected by any change of

19

duties or position of the Grantee thereof, so long as such Grantee continues to provide Service. The obligation of the Company to pay any benefits pursuant to the Plan shall be interpreted as a contractual obligation to pay only those amounts provided herein, in the manner and under the conditions prescribed herein. The Plan and Awards shall in no way be interpreted to require the Company to transfer any amounts to a third-party trustee or otherwise hold any amounts in trust or escrow for payment to any Grantee or beneficiary under the terms of the Plan.

**14.3    Nonexclusivity of the Plan**.

Neither the adoption of the Plan nor the submission of the Plan to the stockholders of the Company for approval shall be construed as creating any limitations upon the right and authority of the Board to adopt such other incentive compensation arrangements (which arrangements may be applicable either generally to a class or classes of individuals or specifically to a particular individual or particular individuals) as the Board in its discretion determines desirable.

**14.4    Withholding Taxes**.

The Company or an Affiliate, as the case may be, shall have the right to deduct from payments of any kind otherwise due to a Grantee any federal, state, or local taxes of any kind required by law to be withheld with respect to the vesting of or other lapse of restrictions applicable to an Award or upon the issuance of any shares of Stock upon the exercise of an Option. At the time of such vesting, lapse, or exercise, the Grantee shall pay in cash to the Company or an Affiliate, as the case may be, any amount that the Company or such Affiliate may reasonably determine to be necessary to satisfy such withholding obligation. Subject to the prior approval of the Company or an Affiliate, which may be withheld by the Company or such Affiliate, as the case may be, in its sole discretion, the Grantee may elect to satisfy such withholding obligation, in whole or in part, (a) by causing the Company or such Affiliate to withhold shares of Stock otherwise issuable to the Grantee or (b) by delivering to the Company or such Affiliate shares of Stock already owned by the Grantee. The shares of Stock so withheld or delivered shall have an aggregate Fair Market Value equal to such withholding obligation. The Fair Market Value of the shares of Stock used to satisfy such withholding obligation shall be determined by the Company or such Affiliate as of the date on which the amount of tax to be withheld is to be determined. A Grantee who has made an election pursuant to this **Section 14.4** may satisfy such Grantee's withholding obligation only with shares of Stock that are not subject to any repurchase, forfeiture, unfulfilled vesting, or other similar requirements. The maximum number of shares of Stock that may be withheld from any Award to satisfy any federal, state or local tax withholding requirements upon the exercise, vesting, or lapse of restrictions applicable to any Award or payment of shares of Stock pursuant to such Award, as applicable, may not exceed such number of shares of Stock having a Fair Market Value equal to the minimum statutory amount required by the Company or the applicable Affiliate to be withheld and paid to any such federal, state or local taxing authority with respect to such exercise, vesting, lapse of restrictions, or payment of shares of Stock.

**14.5    Captions**.

The use of captions in the Plan or any Award Agreement is for convenience of reference only and shall not affect the meaning of any provision of the Plan or such Award Agreement.

### 14.6   Construction.

Unless the context otherwise requires, all references in the Plan to "including" shall mean "including without limitation."

### 14.7   Other Provisions.

Each Award granted under the Plan may contain such other terms and conditions not inconsistent with the Plan as may be determined by the Committee, in its sole discretion.

### 14.8   Number and Gender.

With respect to words used in the Plan, the singular form shall include the plural form and the masculine gender shall include the feminine gender, as the context requires.

### 14.9   Severability.

If any provision of the Plan or any Award Agreement shall be determined to be illegal or unenforceable by any court of law in any jurisdiction, the remaining provisions hereof and thereof shall be severable and enforceable in accordance with their terms, and all provisions shall remain enforceable in any other jurisdiction.

### 14.10   Governing Law.

The validity and construction of the Plan and the instruments evidencing the Awards hereunder shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, other than any conflicts or choice of law rule or principle that might otherwise refer construction or interpretation of the Plan and the instruments evidencing the Awards granted hereunder to the substantive laws of any other jurisdiction.

### 14.11   Section 409A of the Code.

The Plan is intended to comply with Code Section 409A to the extent subject thereto, and, accordingly, to the maximum extent permitted, the Plan will be interpreted and administered to be in compliance with Code Section 409A. Any payments described in the Plan that are due within the Short-Term Deferral Period will not be treated as deferred compensation unless Applicable Laws require otherwise. Notwithstanding anything to the contrary in the Plan, to the extent required to avoid accelerated taxation and tax penalties under Code Section 409A, amounts that would otherwise be payable and benefits that would otherwise be provided pursuant to the Plan during the six-month period immediately following the Grantee's Separation from Service will instead be paid on the first payroll date after the six-month anniversary of the Grantee's Separation from Service (or the Grantee's death, if earlier).

Notwithstanding the foregoing, neither the Company nor the Committee will have any obligation to take any action to prevent the assessment of any excise tax or penalty on any Grantee under Code Section 409A and neither the Company nor the Committee will have any liability to any Grantee for such tax or penalty.

\* \* \*

To record adoption of the Plan by the Board as of December 16, 2014, the Company has caused its authorized officer to execute the Plan.

VENTURE GLOBAL LNG, INC.

By: _Willard Hoagland_

Name: _Willard Hoagland_

Title: _CFO_

22